**In re Posthumous Readmission of Charles P. HOWARD Sr.**

No. 93–1476.

Supreme Court of Iowa.

Feb. 23, 1994.

Robert A. Wright, Sr., Des Moines, and Harley Scott Herman, Leesburg, FL, for posthumous applicant Charles P. Howard, Sr.

HARRIS, Justice.

Harley Scott Herman, as special counsel for the National Bar Association, has applied for posthumous reinstatement of the license of Charles Preston Howard, Sr. The application was filed October 13, 1993, and has been considered by the court, acting en banc.

Howard's license was voluntarily surrendered during a disciplinary investigation and proceeding, and remained revoked at the time of his death on January 25, 1969. The application specifically seeks "posthumous readmission of Charles Preston Howard, Sr.'s membership in the Iowa State Bar Association." The Iowa State Bar Association is a private and voluntary organization whose membership is not controlled by this court. We therefore understand the pending application to seek readmission into the practice of law before the courts of this state.

Our rules do not provide for posthumous admission or readmission. The application presupposes that we suspend the rules and readmit Howard in view of his "contributions to the legal profession, the State of Iowa, and this Nation."

Howard's contributions were indeed outstanding. Most notably he was a cofounder of the National Bar Association, incorporated in 1925 in Des Moines as an organization for African–American lawyers. This public service alone unquestionably merits our commendation. It seems incredible and is clearly scandalous to note that, within living memory, minority lawyers were required to form their own organization in order to, as the application points out, obtain "access to national expertise and educational opportunities." We take pride in acknowledging that an Iowa lawyer took part in addressing this shameful wrong.

Howard also made other contributions as a champion of civil liberties for which he earned a reputation as a tenacious advocate. He also cofounded the National Negro Publisher's Association and published newspapers for minority readers. We are told he eventually became a syndicated United Nations correspondent. An army officer with overseas service in World War I, he spent later years in the cause of peace.

We claim and exercise the inherent authority to superintend the admission into practice in our courts. The application asks that we recognize Howard's many achievements by readmitting him to practice.

Much as we admire Howard's achievements and honor them, a careful review of the disciplinary record conclusively shows that readmission would be inappropriate, even if authorized by our rules. As will appear, the proceeding leading to Howard's disbarment was in large part precipitated by a complaint filed by the late Henry T. McKnight. McKnight, also an African–American lawyer, certainly was not motivated by any feeling of racial prejudice. Following McKnight's complaint, the Polk County Bar Association, in 1951, sought Howard's disbarment, based on four allegations of misconduct. Rather than answer the charge, Howard surrendered his license to practice law on February 16, 1951. A week later we entered an order removing him from the roll of attorneys in Iowa. On the basis of our decision, the Illinois court also removed Howard from its rolls.

Howard was the subject of many ethics complaints over many years. As early as 1935, complaints began arriving at the grievance committee of the Polk County Bar Association concerning his misconduct. In 1935 the local bar ordered Howard to appear to explain his alleged failure to forward money recovered for a client, John Jones. The committee had twice written to Howard for an explanation and received no response. Howard gave the committee a check for the amount owed and the matter was closed.

In 1938 the same committee held a hearing on a complaint of Howard's client, Lytton Scott. The sheriff of Madison County had brought insanity proceedings against Scott, and she employed Howard to bring a suit seeking damages against the sheriff for wrongful prosecution. Howard failed to prosecute the matter and the statute of limitations ran. Howard failed to appear in answer to the complaint and a second hearing was scheduled. Howard again failed to appear. Because of the two failures to appear and Howard's apparent refusal to refund

$200 advanced by Scott, the committee recommended an action for disbarment.

The committee also considered the complaint of Minnie Randle who employed Howard to commence a paternity suit on behalf of her daughter. Again Howard received a fee to file the suit but never actually did so. After many promises to commence the action Howard finally stated that the father, in spite of being gainfully employed, was judgment proof. Once again Howard did not return the fee. The hearing on this complaint was also continued because of Howard's failure to appear.

The same year, 1938, a Mrs. Albert Moss complained that she hired Howard to look after a certain piece of real estate. Although she paid him all monies he requested over the course of several years for taxes and upkeep, Howard never paid the taxes. The property was ultimately sold at a tax sale. Moss did not learn of the sale until after it occurred, but was able to redeem the property. Howard also failed to maintain the premises or pay over the rent received.

An additional complaint, arising in 1936, asserted that a Mrs. Jennie Ross paid Howard the amount due for the continuation of an abstract of title. Ross nevertheless received several statements from the abstract company for this continuation. Each time Ross spoke with Howard he stated he had forgotten to pay the bill and would do so. There is no indication the bill was ever paid.

On the basis of these complaints the bar association filed disbarment proceedings against Howard and soon received three more complaints. The heirs of the Jeff Martin estate complained that Howard failed to distribute $1000 and asserted Howard had appropriated the funds to himself.

Sam Johnson was injured in a coal mine accident. He claimed that Howard agreed to charge no fee unless the recovery or settlement exceeded $125. Howard settled the claim for $125 but nevertheless charged Johnson a fifty dollar fee.

Someone named Cooper complained of Howard's negligent representation in an appeal from a murder conviction. On the basis of these three complaints, the committee decided to investigate further and perhaps include these in the pending disbarment proceedings.

In 1940, after receiving letters from several African–American organizations on Howard's behalf, the committee gave Howard the option of satisfying all complaints against him. If done, only a sixty-day suspension would be recommended. Apparently he failed to do so, because the matter proceeded to trial.

On March 15, 1940, the district court issued its order in the matter. As to the Ross complaint, it found Howard was "extremely dilatory" in his obligations and subjected his client to embarrassment. The court found that Howard appropriated the Moss funds for his own use, although Moss was finally reimbursed. The heirs of the Martin estate had been reimbursed by Howard's bonding company. Finally, Howard admitted receiving a fee to represent Cooper in his appeal and did nothing to pursue it. The allegation involving Randle was dismissed.

The attorney general, who prosecuted disbarment proceedings under the procedure then in effect, recommended lenient punishment. Because of the recommendation and because of Howard's good standing in the bar for over twenty years the district court ordered only a one-year suspension. Howard appealed.

We reduced the suspension to six months, citing Howard's prior good reputation in the bar and months of disabling sickness as mitigating the severity of his unethical conduct. We also noted restitution had been made to all complainants. *In re Disbarment of Howard,* 229 Iowa 999, 295 N.W. 877 (1941). We declined to discuss the factual allegations in detail in an attempt to avoid further tarnishing Howard's name.

Howard's troubles soon began anew. Later in 1941 Dora Radigen complained to the local grievance committee concerning Howard's handling of a case in Dallas County. Howard again did not appear. The committee found no unethical conduct but thought Howard was negligent in accepting a fee without sufficiently acquainting himself with the facts. The committee ordered Howard

to return the fee. Testimony indicated that Howard had engaged in practice while his license was suspended but, because that matter was not involved in the complaint, the committee took no action.

In 1944 a Mr. Piggie complained that he had given Howard funds as partial payment on a note owed to one of Howard's clients. The client never received the amount and continued to hold Piggie responsible.

Also in 1944 Elsie Pearl Wells complained that she paid Howard for court costs in connection with her divorce. A decree was entered, but Howard failed to file it and also failed to pay the court costs.

In 1945 the committee looked into complaints of Howard's handling of a Thompson estate. The committee also was concerned because it appeared that Howard served as attorney for the estate while his license was suspended.

In 1949, after considering these later charges, the committee recommended against bringing disbarment charges.

Howard's eventual disbarment stems from an action brought by the bar association in 1951. It was based on four charges. The first allegation arose in 1945 and asserted that, while acting as attorney for an Iola Lyons Dedman, Howard commenced suit for false arrest. Howard obtained a judgment in the amount of $650 for Dedman but failed to pay the recovered amount to her.

In 1950 Howard was consulted on behalf of a person named Fitch by attorney Henry McKnight. Seeking Howard's advice, McKnight related the details of Fitch's civil rights suit. Encouraged to do so and assured that Howard would assist him, McKnight thereafter commenced suit for Fitch for false arrest. A few days before trial Howard appeared on behalf of the defendants. When confronted by McKnight, Howard was quoted as saying, "I am for hire by people who have money."

A third allegation stated that Howard was retained to bring an action for wrongful death for the estate of Grace Louise Howard. The case was settled and an amount was recovered. Howard failed to pay the recovered funds to the estate until sued. Even then only about two-thirds of the recovered amount was actually recovered from Howard.

Finally, the committee alleged generally that many complaints involving financial transactions between Howard and his clients had been filed with the committee in the past ten years. This of course was a reference to the various matters we have described. In the face of these allegations, Howard surrendered his license to practice law. As mentioned, we subsequently removed his name from the roster of Iowa attorneys.

Howard thereafter sought readmission to the bar two times. These applications were vigorously contested both by the bar and the attorney general. The first application was denied. The second application was dismissed when Howard failed to appear.

We reject the suggestion that Howard's many achievements can obviate his many professional failures. We feel bound on this record to deny the pending application for readmission. We do so without in any way withdrawing or modifying our acknowledgment of Howard's recognized achievements. As a champion of individual liberties he deserves and certainly has our praise. As a lawyer with tragic human frailties he deserved disbarment, as he acknowledged by consenting to it.

**APPLICATION DENIED.**